IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY BOARDMAN, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BROWN'S SUPER STORES, et al., | : | No. 13-1499 |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**TIMOTHY R. RICE**                                                                                       February 2, 2015
**U.S. MAGISTRATE JUDGE**

      Plaintiff Mary Boardman has filed a Motion for Judgment on the Pleadings (doc. 26), arguing that the jury lacked sufficient evidence to find that defendant Brown's Super Stores did not falsely imprison her in violation of Pennsylvania law.  I agree.

      I may grant Boardman's motion only if viewing the evidence in the light most favorable to Brown's, and giving it "every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find" no liability.  McDaniels v. Flick, 59 F.3d 446, 453 (3d Cir. 1995) (citations omitted).  I may not weigh the evidence, determine the credibility of witnesses, or substitute Boardman's version of the facts for the jury's version.  Id.

      Having reserved ruling on Boardman's motion for a directed verdict at trial, N.T. 10/30/2014 at 78-81, I now grant Boardman's motion for judgment as a matter of law because the "record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief" to Brown's.  Alvin v. Calabrese, 455 F. App'x 171, 174 (3d Cir. 2011) (citing Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 249 (3d Cir. 2001)).

I.      Background

This dispute stems from Boardman's behavior in a Shop-Rite grocery store owned by Brown's.  The evidence, viewed in the light most favorable to Brown's, shows that Boardman removed a box of parchment paper, valued at about $3.50, from a store shelf.  See N.T. 10/28/2014 at 112, 153.  She then opened it, took out and felt the paper inside, and returned the box to the shelf without paying for it.  See id.  Meanwhile, Brown's security staff was monitoring Boardman by video surveillance.  See Exhibit P-27 (Video); N.T. 10/28/2014 at 110-13, 150-52.

While attempting to leave the store after buying other groceries, Boardman was stopped by two members of the store's security, William Haenchen and Herman Jackson, and asked to come to the loss prevention office.  N.T. 10/28/2014 at 116-17, 157.  Boardman agreed and followed Haenchen, Jackson, and another female employee into the office.  Id. at 120, 157; see also N.T. 10/29/2014 at 137.  Although the office door was closed, there was no evidence that it was locked, and Jackson and Haenchen left and returned through the door during the meeting.  N.T. 10/28/2014 at 120, 251.  Haenchen testified that Boardman was not free to leave the office during the investigation,[1] though he could not recall if he told Boardman that.  Id.  Haenchen's supervisor, Eric Derr, also testified that retail theft suspects are not free to leave the loss prevention office during an investigation.  Id. at 18-22.  Derr, however, was not present during Boardman's investigation.  Id. at 90-94.

---

[1]     Haenchen was asked, "If [Boardman] said, I want to go to my car, see you later, could she leave?" N.T. 10/28/2014 at 120-21.  Haenchen responded, "No.  I believe not." Id. at 121.

Once in the office, Haenchen explained that Boardman had committed retail theft by opening the parchment paper box.[2] Id. at 121. Boardman offered to pay for the box, but her offer was refused. Id. at 122-23, 126. Haenchen and Jackson instead repeatedly asked and tried to "persuade" Boardman to provide her identification and sign an incident form.[3] Id. at 122-26, 249. Boardman objected to providing her identification and signing the form, and testified she asked to leave and was told she could not. Id.; N.T. 10/29/2014 at 147. Jackson, however, testified that Boardman never asked to leave the room, N.T. 10/30/14 at 75, and Haenchen could not recall Boardman asking to leave, N.T. 10/28/2014 at 127, 163.

Boardman further said that she tried to leave, but was blocked by Haenchen. N.T. 10/29/2014 at 147-48. Haenchen disputed this fact, stating that he never blocked the door or impeded Boardman's exit. See 10/28/2014 at 127-28, 130. Both Boardman and Brown's argue that the video supported their version of these facts. Although the video chronicles Boardman's lengthy detention in a small office, see Video, Boardman's movements are not completely clear and I must draw all inferences in favor of Brown's and credit Haenchen's denial of Boardman's claim.

Haenchen told Boardman that if she did not provide her identification, he would call the police. Id. at 132, 162. Boardman told him to call the police. Id. at 132, 162, 249; see also N.T. 10/30/2014 at 148. When the police arrived approximately 15 minutes later, Boardman gave them her identification. Id. at 133. Boardman then was asked to sign Brown's incident report

---

[2] Boardman had not committed theft by opening the box. In a prior order, the Honorable Paul Diamond found that, as a matter of law, Brown's did not have probable cause to detain Boardman for committing theft when Haenchen saw her open the box, feel the paper, and return the box. 3/12/04 Order (doc. 60) at 8.

[3] The incident form stated that the signator "acknowledge[s]" that, among other things, she "appropriated to [her] own use, without paying for or intending to pay for," and "depriv[ed] the merchant" of, certain listed articles. P-16 (Loss Prevention Incident Report).

and, when she began altering the form, was forcibly handcuffed by the police. Id. at 137-38. Boardman was subsequently released from the handcuffs, signed an unaltered form, and left the office. Id. at 139-40.

At trial, Boardman alleged Brown's falsely imprisoned her under Pennsylvania law, and the arresting officers used excessive force in violation of the United States Constitution. Boardman sought judgment as a matter of law under Rule 50(a) against Brown's on the false imprisonment claim; I reserved ruling on the motion and submitted the case to the jury. The jury returned a unanimous defense verdict, and I entered judgment in favor of the defendant police officers on the excessive force claim. As required by Rule 50(b), Boardman has now renewed her motion for judgment as a matter of law against Brown's.

II.     Discussion

Boardman claims she is entitled to judgment as a matter of law against Brown's because the store employees intentionally confined her in the loss prevention office against her will without legal justification. Memo. in Support of Renewed Motion for Judgment as a Matter of Law (doc. 124) at 4. She contends that testimony from both parties showed that she "was not free to leave the loss prevention office once she entered it." Id. at 2.

Brown's, however, claims the evidence, viewed in the light most favorable to it, showed that Boardman: "voluntarily accompanied [Haenchen and Jackson] into the [loss prevention] office," never asked to leave, chose to remain and wait for the arrival of the police, "was never physically restrained," and "had a reasonable means of escape via the unlocked door in the loss prevention office." Brown's Br. in Support of Response (doc. 125) at 2.

I instructed the jury that to establish false imprisonment under Pennsylvania law:

Ms. Boardman must show by a preponderance of the evidence that Brown's Super
Stores intentionally confined her against her will. Confinement means there is no

4

>reasonable means of escape known to the restricted person. A reasonable means of escape is an escape by which a person would run no risk of harm to herself or her property. A confinement may be accomplished by actual or apparent physical barriers or by overpowering physical force. A confinement also may be accomplished by submission to physical force, threats of physical force, or other form of duress or coercion.

N.T. 10/30/14 at 105-06; <u>see also</u>; Pa. S.S.J.I. (Civ.) § 17.50; <u>Renk v. City of Pittsburgh</u>, 641 A.2d 289, 293 (Pa. 1994) ("elements of false imprisonment are (1) detention of another person, and (2) unlawfulness of such detention"). The parties did not object to the charge as read.[4] N.T. 10/30/2014 at 115.

The parties do not dispute that after Boardman entered the loss prevention office, the door was closed and she remained in the confined room with Haenchen, Jackson, and another female employee for more than 40 minutes. N.T. 10/28/2014 at 120, 247. Brown's witnesses testified that Boardman was not free to leave during this time. Derr stated that individuals stopped for retail theft are not free to leave the loss prevention office while security officers conduct their investigation and ensure that the suspect signs an incident form. N.T. 10/28/14 at 18-22. Brown's loss prevention officers, including Haenchen and Jackson, are trained to take those steps and are given a manual outlining the policies. <u>Id.</u> at 8-22. Although Derr was not present for Boardman's incident, his testimony on Brown's detention policy was uncontested, and confirmed by Haenchen.

Derr acknowledged that individuals cannot be forced to provide identification or to sign a retail theft incident form, but said that Pennsylvania law allows Brown's to summon police if the

---

[4] Before closing arguments, Brown's requested that the charge also state that Boardman had to attempt to leave the office. N.T. 10/30/2014 at 82. I denied this request, finding that Brown's could make this argument based on the portion of the charge requiring the confinement to be against the plaintiff's will. <u>Id.</u> at 83. Brown's did not object then or after the final charge was given to the jury. <u>See</u> <u>Henderson v. Chartiers Valley Sch.</u>, 136 F. App'x 456, 459 (3d Cir. 2005) (objection to charge waived when plaintiffs failed to renew objection to court's final charge). Nevertheless, as explained here, the charge properly apprised the jury of Pennsylvania law.

individuals refuse to cooperate. Id. at 83-85, 102-03 (if an individual refuses to sign the store form, "[the only option] at that point is only to involve the police"). This is precisely what Derr directed Haenchen to do when Haenchen called for advice on how to handle Boardman. Id. at 91-92, 163.

Haenchen admitted that Boardman was not permitted to leave the loss prevention office during his investigation, id. at 120-21, which tracks Derr's and Jackson's testimony that an individual who refuses to cooperate with Brown's investigation of retail theft is held for police action. Id. at 84-85, 102-03, 263 (Jackson's testimony that Boardman's refusal to sign the incident form permitted Brown's to "let the police officers handle it").

This uncontested testimony from Brown's employees established that Brown's intended to confine Boardman in the small enclosed office until she provided her identification and signed the store's retail theft form voluntarily or with police assistance. Although Brown's did not use physical force to keep Boardman in the office, Pennsylvania law does not require physical restraint to prove false imprisonment. Rather, it requires only that Boardman be intentionally confined against her will. N.T. 10/30/14 at 105-06. Physical force is merely one of the many possible ways to prove intentional confinement. See id. False imprisonment also is established by physical barriers or coercion, see id., both of which Boardman faced.

Brown's raises several theories to sustain the jury's verdict. First, it argues that the jury could have concluded that Boardman was not confined against her will because the evidence showed that she "voluntarily accompanied [Brown's security officers] into the office and voluntarily remained there to await the arrival of the police." Brown's Br. at 7. Brown's asserts Boardman's testimony was the only evidence that she was confined against her will and the jury disbelieved her. Id.

6

Boardman admitted that she voluntarily went with Haenchen and Jackson to the loss prevention office,[5] N.T. 10/29/2014 at 137, and acknowledged that, later, she agreed Brown's should call the police because she assumed the police would take her side in the dispute. Id. at 148. In between those two times, however, when Haenchen and Jackson had accused her of retail theft and required her to provide her identification and sign the incident form, there was no evidence from which the jury could have believed that she voluntarily stayed in the office. After learning of the accusations against her, Boardman offered to pay for the allegedly stolen item, but her offer was refused. N.T. 10/28/2014 at 120-22. Haenchen instead insisted that Boardman provide identification and sign the loss incident form. Id. at 120-24. Boardman objected, and as Jackson admitted, he and Haenchen then repeatedly demanded Boardman's identification. Id. at 246, 249-50. As the demands continued, Jackson acknowledged that Boardman became "agitated." Id.

Even assuming Boardman elected to stay in the room and wait for the police, as Brown's claims, she was only given the choice of: (A) providing her identification and signing what she believed was a false confession; or (B) waiting for the police. See N.T. 10/28/2014 at 18-22, 120-21. Both options required her to stay in the loss prevention office, as Herr and Haenchen admitted. See id. If Brown's had been justified in holding Boardman under the Retail Theft Act, it would have been authorized to limit her choices to those which kept her in the small office. Brown's, however, had no legal right to detain Boardman for retail theft. See 3/12/2014 Order at 7-8 (Brown's was not entitled to immunity based on Retail Theft Act because it did not have probable cause to suspect Boardman of retail theft). Accordingly, Brown's could not force

---

[5] Haenchen explained that he and Jackson stopped Boardman in the vestibule of the grocery store, as opposed to the parking lot, because there she did not have the "freedom to run." N.T. 10/28/2014 at 119.

Boardman to choose between option A – a short stay in the enclosed office that would end with her providing her identification and signing the incident form, or option B – a longer stay in the office that would end after the police arrived.

Second, Brown's contends that the jury could have found that Boardman was not completely confined in the office, i.e., that she had a reasonable means of escape through the unlocked door.[6]  Brown's Br. at 7-8.  Haenchen, however, testified that Boardman was "not free to leave" the office during the investigation.  N.T. 10/28/2014 at 120-21.  Consistent with that policy, at least one, and up to three, Brown's employees were stationed between Boardman and the door at all times.  See P-27 (Video).  Such evidence, even when viewed in favor of Brown's, establishes that the door was not a reasonable means of escape for Boardman and her shopping cart of groceries.  See Restatement (Second) of Torts § 36 (comment a) ("even though there may be a perfectly safe avenue of escape, the other is not required to take it if the circumstances are such as to make it offensive to a reasonable sense of decency or personal dignity").

Brown's contends that the Restatement and case law from this Court establish that a closed, but unlocked door, does not result in complete confinement.  See Brown's Br. at 8 (citing Restatement (Second) of Torts § 35, Illustration 1), Gavigan v. Southland Corp., No. 97-2807, 1998 WL 103380 (E.D. Pa. Feb. 25, 1998), Smith v. Bell Atlantic Network Serv., No. 94-1605, 1995 WL 386967 (E.D. Pa. June 28, 1995), and Caswell v. BJ's Wholesale Co., No. 97-7187, 5 F. Supp. 2d 312 (E.D. Pa. 1998).  The Restatement, however, includes illustrations that suggest that a confinement can occur with both locked and unlocked doors, showing that confinement is

---

[6]  Brown's also argues that Boardman has waived any claim that she was confined by the closed door because she did not refer to the closed door in her argument on her motion for a directed verdict.  Boardman's motion, however, was based on all of the evidence introduced at trial, which included the closed door and other circumstances relevant to her confinement.  See N.T. 10/30/2014 at 73-81.

not dependent on whether the door is locked. See Restatement (Second) of Torts § 38, Illustration 1, § 36 (confinement with unlocked door), Illustrations 3-5 (same).

Similarly, the cases cited by Brown's are factually distinguishable. In Caswell, the plaintiff was held in an office with a "wide open" door. 5 F. Supp. 2d at 312. Although the door was blocked by an employee, the plaintiff "merely walked around the employee" and exited the office at one point. Id. In Gavigan, the plaintiff was interviewed by her employers in a closed office, but the path to the door was clear pursuant to company policy, and the plaintiff was left alone in the office at one point.[7] 1998 WL 103380 at *2-*3. There also was no evidence showing that the officers would have prevented the plaintiff from leaving. See id. at *4. In Smith, the plaintiff was interviewed twice by her employers in a closed, but unlocked room, and verbally insulted. 1995 WL 389697 at *6. During the second interview, however, the plaintiff freely left the room. Id. Here, Haenchen admitted that Boardman was not free to leave the office, the door was closed, at least one employee was positioned in front of the door at all times, and Boardman never walked around the employees and freely exited the office. Boardman also was not an employee who had an interest in remaining in the room because it concerned her job.

Third, Brown's asserts that, because I must infer the jury rejected Boardman's claim that she asked to leave, I must find it concluded that she did not test the limits of her confinement, as required for a claim of false imprisonment. Brown's Br. at 9-11. As Brown's concedes, however, Pennsylvania law does not include this specific requirement. See Renk, 641 A.2d at 293; Gagliardi v. Lynn, 285 A.2d 109, 111 n.2 (Pa. 1971) (false imprisonment occurs where: (1) actor intends to confine person within boundaries fixed by the actor; (2) his act directly or

---

[7]   Gavigan also admitted to stealing approximately $1,000 of merchandise from her employer, giving her a strong interest in remaining in the room and avoiding prosecution. Gavigan, 1998 WL 103380 at *3 n.5.

indirectly results in such confinement of the person; and (3) the person confined is conscious of the confinement or injured by it) (citing Restatement (Second) of Torts § 35); see also Brown's Br. at 6 (citing Gagliardi as Pennsylvania law on false imprisonment), 9 (citing only federal law for requirement that plaintiff test her boundaries).  It, therefore, was not included in the jury instructions, which tracked unequivocal Pennsylvania law.  See N.T. 10/30/14 at 105-06; Pa. S.S.J.I. (Civ.) § 17.50.

Although some federal decisions have held that under Pennsylvania law a plaintiff must make some attempt to test her boundaries, this requirement applies only if physical force or barriers are absent.[8]  See Pope v. Rostraver Shop 'N' Save, 389 F. App'x 151, 153 (3d Cir. 2010) ("in the absence of physical force or physical barriers, plaintiff must make some attempt to determine whether s/he is actually confined").  When Judge Diamond referenced this legal requirement in his Order addressing the parties' pre-trial motions for summary judgment, the

---

[8]  This requirement was first cited in Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 540-41 (E.D. Pa. 1982), which relied on Wisconsin law, not Pennsylvania law.  Both cases involve unique facts that are not applicable here.  See id. at 541 (plaintiff visited by police in own apartment, door was open the entire time, and there was no evidence that she asked the police to leave); Herbst v. Wuennenberg, 266 N.W.2d 391 (WI 1978) (three men were stopped by one woman in building vestibule).

The other cases cited by Brown's are distinguishable on similar grounds.  See supra at 9 (discussion of Gavigan and Smith); Vargas v. City of Philadelphia, No. 11-2639, 2013 WL 6077160 at *15 (E.D. Pa. Nov. 18, 2013) (unconscious plaintiff could not have been aware of confinement or request to leave); Park v. Veasie, No. 9-2177, 2012 WL 1382222 at *8, *16 (M.D. Pa. April 20, 2012) (upholding search warrant and noting "Third Circuit case law is unambiguous with regard to the right of law enforcement to detain persons present during the service of a search warrant"); Zeglen v. Miller, No. , 2007 WL 5005243 at *7 (M.D. Pa. Nov. 30, 2007) (finding "defendant's willingness to enter the plaintiff's boat and descend into the cabin below a second time, knowing full well that sexual activities would probably take place, undermines any claim that she was unlawfully detained"); Sanford v. O'Rourke, No. 3:06-739, 2008 WL 2550882, at *19 (M.D. Pa. June 23, 2008) (dismissing plaintiffs' claims because they produced no evidence that they had attempted to test the boundary, and dismissing the third plaintiff's claim because, when he had tested the boundary by attempting to leave, he had been permitted to leave).

evidence was still disputed concerning the precise manner of Boardman's imprisonment.  See 3/12/04 Order at 8.  At trial, the evidence established that Boardman was confined by physical barriers, i.e., an enclosed office, and Brown's would not permit her to leave.  See supra at 4-6; compare Pope, 389 F. App'x at 153 (plaintiff was detained near front entrance to the store and walked out of the store unescorted to talk to the police).

The jury lacked sufficient evidence to return a verdict in favor of Brown's on Boardman's false imprisonment claim.  Judgment is entered as a matter of law for Boardman.

The parties are directed to schedule a status conference within seven days to address the remaining question of damages.

An appropriate order follows.

                BY THE COURT:

                */s/ Timothy R. Rice*
                TIMOTHY R. RICE
                U.S. MAGISTRATE JUDGE